By the Court.—Sedgwick, Ch. J.
In this case it is not a question whether the plaintiff should have thought of the possibility of a train coming southwardly on the other side of the train going northwardly. He did think of it. He looked in a certain direction, described by him in the word “ around,” for a flagman. He listened for a coming train, to hear its noise or whistle or bell. Although, according to his testimony, he did not see a flagman, and noise of the going train prevented his hearing the sound from the coming train, it was still a matter of common caution enjoined by law for him to look up the track to see if a train were coming. It is claimed by the able argument for the plaintiff, that he did look, but was prevented from seeing the down train, first by a house.which he was passing, and next by the up train, intervening. Assuming that on this appeal, such a construction must be given to the plaintiff’s testimony, the following are uncontroverted facts in the case.
*80 The train that struck the plaintiff’s horses was on the west track. The plaintiff approached from the east and stopped in front of a house, 36 feet wide. He stopped while the up-train remained in front of him on the east track. As soon as the last car of the up-train had passed north of the crossing or road, where he was, he started his horses on a walk to cross the tracks. Of course, while he was in front of the house, he could not see up the track, and it would be vain for him to look in that direction for the purpose of seeing. But when he reached the westerly line of that house, he, if he had looked, could have seen a longdistance up the track, and if nothing else intervened, would have seen the coming train, would have been in safety, could have stopped, and there would have been no accident.
The plaintiff was driving a four-horse team. The heads of the leaders were twenty-four feet from his seat. When he reached the westerly line of the house, he was eight feet southerly from the house, the horses’ heads were four feet from the easterly track and fifteen feet from the westerly track, on which the down-train that afterwards struck him, was coming. There was no fact shown that would enable the jury to say that he could not have stopped for any reason. The tendency of the testimony is in the other direction.
In Baxter v. Troy & Boston R. R. Co. (41 N. Y. 502), the court said: ‘ ‘ The plaintiff testified that he was well acquainted with the crossing ; that he did not look for the train; that he could not have seen it until upon the track, if he had, on account of the hill, etc. If this was true, the plaintiff was excused from looking, as the law does not require one to look to see something, when it is impossible to see it.” After remarking that the defendant was not required to leave his vehicle and go to the track to observe, the opinion further said: “All that the law requires-is a reasonable use of the senses ; that is, one approaching the crossing must look along the track when his view is unobstructed, and thus ascertain whether there is danger in *81 crossing, to be apprehended from trains approaching in either direction;” and—“but there was evidence given by the defendant strongly tending to show that the defendant could, by looking when at any distance within twenty-five feet from the track, have seen the train if within twenty rods of the crossing, and stopped the team before entering upon the track, and thus avoided the danger. If this be true, his omission to look as required, directly contributed to the injury received, and the plaintiff should have been nonsuited.”
In Cordell v. N. Y. C. & H. R R. Co. (70 N. Y. 119), the rule on this subject is in these words : “If the obstructions prevented the plaintiff’s seeing the approaching train until he arrived at the track, he would not be negligent for not seeing it before.”
The plaintiff then did not show his freedom from negligence, unless the moving up-train prevented his seeing, and this was a satisfactory excuse for the plaintiff going on. If the plaintiff moved at no faster gait than he testified, and did not start before the last car of the up-train had reached the northerly side of the crossing, and if when his leaders were upon the track of the down-train, he saw it 25 or 30 feet from him, there is at least great doubt that the up-train had not gone when he reached the westerly line of the house, so far that if he had looked he could not have seen the coming train. Assuming, however, this to be incorrect, the question will be, if, before he was on the dangerous track, he observed that the moving train obstructed his view. Naturally he was not bound as a matter of ordinary prudence to wait until he could get a view. If the train were an obstruction at a particular point of time, its motion was making it less and less an obstruction, and the motion must have been greater and greater, so that with certainty it maybe considered in a very short time there would have been an open view. It seems, especially when there is an apprehension of the possibility of a train coming up, and the person perceives that within an inconsiderable time he can know whether it is *82 safe for his property or himself to go on, he is called upon by common prudence to wait during that time. I think that the evidence shows that if the plaintiff had looked at the proper place, and waited as long as he should have waited, he would have seen his danger. The judgment should, therefore, be affirmed.
I am further of the opinion that no negligence was shown on the part of the defendant; but it is unnecessary to discuss this, in consideration of the result already announced. „
Judgment affirmed, with costs.
O’Gorman, J., concurred.